BARNES LAW
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 510-6211
Facsimile: (310) 510-6225
Robert E. Barnes
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | | |
|---|---|---|
| BRYAN SINCLAIR ELLIS, | ) | Case No.  1:23-cv-99 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF HAMILTON, TENNESSEE, | ) | **JURY TRIAL DEMANDED** |
| HAMILTON COUNTY SHERIFF JIM | ) | |
| HAMMOND, QCHC OF TENNESSEE, PLLC, | ) | |
| OFFICER JAMES LEWIS, OFFICER TYLER | ) | |
| HOLLAND, OFFICER SAMUEL STEPHESON, | ) | |
| OFFICER PAUL HICKS, OFFICER BENJAMIN | ) | |
| PEERY, OFFICER ERIC QUALLS, OFFICER | ) | |
| CERION CARSON, OFFICER JOHN HARGIS, | ) | |
| OFFICER BRANDON BOOTH, OFFICER | ) | |
| STEPHEN ROBERTS, OFFICER DYLAN | ) | |
| MCCLOUD, OFFICER RODNEY TERRELL, | ) | |
| OFFICER JESSE BASKOWSKY, OFFICER | ) | |
| ROBERTSON, OFFICER CHASTAIN, OFFICER | ) | |
| GELACIO, OFFICER HUGHES, OFFICER | ) | |
| GREENE, OFFICER ACKERMANN, OFFICER | ) | |
| ALLEN, OFFICER GAZZAWAY, OFFICER | ) | |
| BRADFORD, OFFICER THOMPSON, OFFICER | ) | |
| GREEN, OFFICER JOHNSON, OFFICER | ) | |
| LEDFORD, OFFICER CASTELLANOS, | ) | |
| OFFICER TAYLOR, OFFICER CRAIG, OFFICER | ) | |
| SATTERFIELD, OFFICER KERNEA, OFFICER | ) | |
| PITRE, OFFICER PERICH, OFFICER MURPHY, | ) | |
| OFFICER ORTWEIN, OFFICER WYATT, | ) | |
| OFFICER HORN, OFFICER ROWLANDS, | ) | |

OFFICER JACKSON, OFFICER CHISHOLM,  )
OFFICER SMITH, OFFICER HARTMAN,  )
NURSE E. WATSON, NURSE LORIE GRAVES,  )
NURSE KENNETH CRIDER, JR., NURSE M.  )
ALFINDA, NURSE KELLY POWELL, NURSE  )
EDWINS, DONALD KERN, MD, CHEYENNE  )
HUX, MD, and JOHNNY BATES, MD.  )
                                                          )
        Defendants.                               )

## FEDERAL COMPLAINT WITH JURY DEMAND

COMES the Plaintiff, by and through undersigned counsel, and herein files the following claim for damages and relief against Hamilton County, Tennessee, Quality Correctional Health Care, and the individual Defendants.

## BACKGROUND

1.      This is a civil rights action brought under the Fourteenth Amendment to the Constitution of the United States and Title 42 of the United States Code, Section 1983 and 1988. Plaintiff brings this action to obtain compensatory damages, punitive damages, attorneys' fees, costs, and other equitable relief arising out of his brutal beating and subsequent denial of medical care that occurred while he was detained at the Silverdale Detention Center ("Silverdale"), and was due to the deliberate indifference of, Hamilton County, the Hamilton

County Sheriff's Office ("HCSO"), and the deputies and medical personnel at Silverdale who work for Quality Correctional Health Care.

2.    Silverdale has long had the reputation of being a poorly run and dangerous jail. Inmates have been attacked and injured by other inmates armed with makeshift weapons, including stabbings with "shanks," or jail knives. Inmates have been raped. Silverdale inmates also have died due to medical neglect and maltreatment by staff, prompting numerous lawsuits.

3.    This state of affairs is well-known, as was evidenced in mid-February of 2020, when federal Judge Sandy Mattice, after consultation with federal Judge Travis McDonough, directed all fifty-two federal inmates housed in Silverdale to be transferred out of Silverdale and put into neighboring facilities due to concern for the inmates' safety.

4.    Hamilton County took over operations of the formerly privately-run jail in December of 2020, but incidents of inmate-on-inmate violence and failures in providing adequate medical care to inmates have not abated.

5.    Plaintiff in this complaint, Bryan Sinclair Ellis, ("Ellis" or "Plaintiff"), on April 24, 2022, was yanked off the top bunk in his cell and beaten by three other inmates at Silverdale.

6.    At no time during Plaintiff's assault – which resulted in such injuries as multiple fractures of his left eye socket and nasal arch, dural injury, double

vision and cellulitis that could have led to permanent blindness – did sheriff's deputies employed at the jail intervene or help.

7.     After the assault, Plaintiff was neglected by employees of the jail and Quality Correctional Health Care, the private company contracted to care for inmates.

8.     For example, Plaintiff never got his prescribed, seven-day follow-up visit with an eye doctor and plastic surgeon. So, when Plaintiff got eye surgery on May 20, 2022, after he was released from jail, bones in his eye socket had to be rebroken because they hadn't set properly.

9.     Plaintiff suffered lingering effects from the assault, including high blood pressure, dizziness, nausea, difficulty sleeping, pain and physical limitations.

## JURISDICTION AND VENUE

10.     This action is brought pursuant to 42 U.S.C. §§ 1983. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the Eighth and Fourteenth Amendments to the Constitution of the United States. Plaintiff also invokes supplemental jurisdiction over claims under state constitutional and statutory law, pursuant to 28 U.S.C. §1367.

4

11.    The venue is proper in the Eastern District of Tennessee under 28 U.S.C. § 1391(b)(2) where Plaintiff is domiciled and Silverdale Correctional Facility operations are based.

## PARTIES

### *Plaintiff*

12.    Bryan Sinclair Ellis is a citizen of the full age of majority and a lifelong Chattanooga resident who currently lives in a sober living house in Nashville, Tennessee. At the time of his assault, he was domiciled inside Silverdale.

### *Defendants*

13.    The County of Hamilton, Tennessee is a municipality that was created by the state of Tennessee in 1819. It owns the Silverdale Correctional Facility, and is responsible for its operations.

14.    Jim Hammond, the former elected Sheriff of Hamilton County, in his individual and official capacity as sheriff, is an adult citizen of the State of Tennessee and is domiciled in Hamilton County, Tennessee.

15.    Hammond was in charge of the Silverdale Correctional Facility and was responsible for the hiring, training, supervision, discipline and control of the deputies under his command. He was responsible for all actions of the staff at

5

Silverdale Correctional Facility. He was the final policy maker. He was liable both directly and vicariously for the actions complained of herein.

16. Defendant QCHC of Tennessee, PLLC ("QCHC"), is a professional limited liability company with its principal office in Brentwood, Tennessee. QCHC contracts with Silverdale to provide medical care to the inmates at Silverdale.

17. Defendant Officer James Lewis is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

18. Defendant Officer Tyler Holland is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

19. Defendant Officer Samuel Stepheson is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

20. Defendant Officer Paul Hicks is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff

6

from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

21.    Defendant Officer Benjamin Peery is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

22.    Defendant Officer Eric Qualls is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

23.    Defendant Officer Cerion Carson is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

24.    Defendant Officer John Hargis is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

25.    Defendant Officer Brandon Booth is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect

7

Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

26. Defendant Officer Stephen Roberts is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

27. Defendant Officer Dylan McCloud is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

28. Defendant Officer Rodney Terrell is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

29. Defendant Officer Jesse Baskowsky is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

30. Defendant Officer Robertson is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff

from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

31.   Defendant Officer Chastain is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

32.   Defendant Officer Gelacio is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

33.   Defendant Officer Hughes is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

34.   Defendant Officer Greene is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

35.   Defendant Officer Ackermann is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff

from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

36.    Defendant Officer Allen is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

37.    Defendant Officer Gazzaway is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

38.    Defendant Officer Bradford is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

39.    Defendant Officer Thompson is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

40.    Defendant Officer Green is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff

from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

41.    Defendant Officer Johnson is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

42.    Defendant Officer Ledford is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

43.    Defendant Officer Castellanos is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

44.    Defendant Officer Taylor is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

45.    Defendant Officer Craig is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff

from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

46.    Defendant Officer Satterfield is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

47.    Defendant Officer Kernea is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

48.    Defendant Officer Pitre is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

49.    Defendant Officer Perich is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

50.    Defendant Officer Murphy is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff

from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

51.    Defendant Officer Ortwein is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

52.    Defendant Officer Wyatt is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

53.    Defendant Officer Horn is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

54.    Defendant Officer Rowlands is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

55.    Defendant Officer Jackson is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff

from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

56.     Defendant Officer Chisholm is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

57.     Defendant Officer Smith is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

58.     Defendant Officer Hartman is a correctional officer with the HCSO working at Silverdale. Upon information and belief, he failed to protect Plaintiff from being brutally beaten at Silverdale, and he further failed to provide Plaintiff with adequate medical care following the assault.

59.     Defendant Nurse E. Watson is a nurse employed by QCHC working at Silverdale. Upon information and belief, she failed to provide Plaintiff with adequate medical care following the assault.

60.     Defendant Nurse Lorie Graves is a nurse employed by QCHC working at Silverdale. Upon information and belief, she failed to provide Plaintiff with adequate medical care following the assault.

61. Defendant Nurse Kenneth Crider, Jr., is a nurse employed by QCHC working at Silverdale. Upon information and belief, he failed to provide Plaintiff with adequate medical care following the assault.

62. Defendant Nurse M. Alfinda is a nurse employed by QCHC working at Silverdale. Upon information and belief, they failed to provide Plaintiff with adequate medical care following the assault.

63. Defendant Nurse Kelly Powell is a nurse employed by QCHC working at Silverdale. Upon information and belief, she failed to provide Plaintiff with adequate medical care following the assault.

64. Defendant Nurse Edwins is a nurse employed by QCHC working at Silverdale. Upon information and belief, they failed to provide Plaintiff with adequate medical care following the assault.

65. Defendant Donald Kern, MD, is a doctor employed by QCHC working at Silverdale. Upon information and belief, he failed to provide Plaintiff with adequate medical care following the assault.

66. Defendant Cheyenne Hux, MD, is a doctor employed by QCHC working at Silverdale. Upon information and belief, she failed to provide Plaintiff with adequate medical care following the assault.

67. Defendant Johnny Bates, MD, is a doctor employed by QCHC working at Silverdale. Upon information and belief, he failed to provide Plaintiff with adequate medical care following the assault.

68. Plaintiff is informed and believes and thereon alleges that each Defendant acted at all times relevant herein as the agent, servant, employee, supervisor, co-venturer, subsidiary, and/or corporate-parent of each of the remaining Defendants. Plaintiff further alleges that the acts or omissions of any agent or employee of Defendants were done within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, subsidiary, and/or corporate-parent relationship. Plaintiff will seek leave to amend this Complaint to allege Defendants' true names and capacities when the same has been ascertained.

## FACTUAL ALLEGATIONS

### *History of Medical Neglect, Inhuman Conditions, and Inmate on Inmate Violence at Silverdale*

69. Silverdale is notorious for its failure to provide adequate medical care to inmates, inhuman living conditions, and failure to protect inmates from violence.

16

70.     A Nashville-based private prison corporation, CoreCivic, formerly the

Corrections Corporation of America, operated Silverdale from 1984 until Hamilton

County took over operations in December of 2020.

71.     Despite Hamilton County's takeover of the jail, failures in providing

adequate medical care to inmates, inhuman living conditions, and failures in

protecting inmates from violence have continued.

72.     On October 5, 2020, five Silverdale inmates were charged with

attempted first-degree murder arising from an attack on a fellow prisoner that

lasted for one to two hours and left the victim with 73 stab wounds. The

Chattanoogan, *5 Silverdale Inmates Charged With Attempted Murder In Attack On*

*Fellow Prisoner; Victim Had 73 Stab Wounds In Assault Lasting 1-2 Hours* (last

updated, January 29, 2021), available at

73.     https://www.chattanoogan.com/2021/1/29/422360/5-Silverdale-

Inmates-Charged-With.aspx.

74.     On April 23, 2021, multiple Silverdale inmates were stabbed

numerous times by fellow inmates wearing towels over their faces when officers

placed them in a new cell despite the victims warning the officers that they would

be attacked if placed in that cell. *Deloney v. County of Hamilton, Tennessee, et al.,*

No. 1:22-cv-00094 (E.D. Tenn. April 15, 2022), Amended Complaint, Dkt. No. 6,

¶ 17-26. The mother of one of the victims claimed that she spoke to her son more

than twelve hours after the attack and he was still bleeding from his wounds and had not been taken to the hospital. Michelle Heron, Local 3 News, *UPDATE: 7 inmates charged in Silverdale Detention Center stabbing, HCSO says* (last updated, December 1, 2021), available at https://www.local3news.com/local-news/whats-trending/update-7-inmates-charged-in-silverdale-detention-center-stabbings-hcso-says/article_641f7752-3fb7-5eeb-9187-3a2af3488bcc.html.

75. On September 5, 2021, a Silverdale inmate was stabbed nine times, including once in the face, when officers failed to lock his cell door and ignored the victim's attempts to alert them to the mistake. *Brinkley v. County of Hamilton, Tennessee, et al.*, No. 1:22-cv-00095 (E.D. Tenn. April 15, 2022), Amended Complaint, Dkt. No. 6, ¶ 17-24.

76. On July 22, 2021, an inmate at Silverdale filed a complaint *pro se* and *in forma pauperis* alleging that he was beaten by Hamilton County correctional officers and then denied medical care for his injuries. The inmate alleges that he was punched, thrown against a wall, and had his head rammed into a steel door. Afterwards, nurses came into his cell and told him to "get up and to quit crying like a big baby." The inmate claims he was left in the cell floor for three days, receiving no medical treatment, and being forced to urinate and defecate on himself. When a nurse finally did treat and document his injuries, she was allegedly threatened by Silverdale officers for doing so. In analyzing his complaint

under the Prison Litigation Reform Act ("PLRA"), the Court found that the inmate had stated plausible constitutional claims of excessive force and denial of constitutionally adequate medical care. His case is still pending before this Court. *Holland v. Booth, et al.*, No. 1:21-cv-00166 (E.D. Tenn. July 22, 2021), Memorandum & Order, Dkt. No. 37, pgs. 2-4, 12.

77.    On October 2, 2021, an inmate being housed in Silverdale's "drunk tank," was brutally beaten by another inmate. He received two black eyes, a concussion, a split chin, and had his lip torn away from his jaw. The inmate who committed the assault was known to Silverdale as being a violent offender but was still kept in the same cell as non-violent offenders. As a result of the attack, the victim now suffers from nerve damage and his smile is no longer symmetrical. *Gifford v. Hamilton County, et al*., No. 1:22-cv-00245 (E.D. Tenn. September 28, 2022), Complaint, Dkt. No. 1, ¶ 19-31.

78.    In February of 2022, an open records request filed by NewsChannel9 revealed that Silverdale failed an inspection conducted by the Tennessee Corrections Institute in September of 2021. The inspection listed numerous deficiencies such as overcrowding in male housing units, issues with sanitation, maintenance, and hygiene related to beds, multiple cameras in need of repair, and an HVAC unit in need of repair. In response to the report, Sheriff Hammond admitted that Hamilton County inherited "an aging facility with numerous

problems and infrastructure needs." Eric Price, News Channel 9, *Inspection finds 'deficiencies' at Silverdale Detention Center in Hamilton County* (last updated, February 3, 2022), available at

79.     https://newschannel9.com/news/local/inspection-finds-deficiencies-at-silverdale-detention-center-in-hamilton-county.

80.     In March of 2022, Jimi Hammond, information technology manager for the sheriff's office and daughter of Sheriff Hammond, admitted that from the beginning Silverdale never had adequate security technology required for a maximum-security lockup. She agreed with Commissioner Chip Baker that the facility's security system "seemed to be in shambles" from the beginning. Logan Hullinger, Chattanooga Times Free Press, *Silverdale prison security 'in shambles'; Hamilton County Commission to vote on $6.3 million in upgrades* (last updated, March 9, 2022), available at https://www.timesfreepress.com/news/2022/mar/09/silverdale-security/.

81.     On March 22, 2022, an inmate was raped at Silverdale. The inmate was drugged by another inmate, passed out, and awoke to a crowd cheering and jeering her, yelling such things as "She got you," and "You deserved it." One inmate declared that the victim had been "fisted." Despite the noise generated by the crowd, at no point during the rape did Silverdale personnel intervene. In fact, Silverdale personnel eventually placed the victim back in the same pod as her

rapist. The victim suffered severe tissue damage to her vagina area, extending to her cervix. *Holt v. Hamilton County, Tennessee, et al.,* No. 1:23-cv-00061 (E.D. Tenn. March 22, 2023), Complaint, Dkt. No. 1, ¶ 34-50.

82. In April of 2022, two inmates at Silverdale were stabbed by other inmates and another inmate died of a drug overdose. Illegal drugs are considered widely available at the facility due to neglect by officials. The Chattanoogan, 2 Inmates Stabbed At The County Jail; Another Inmate Reported Dead Of Drug Overdose At Silverdale (last updated, April 26, 2022), available at https://www.chattanoogan.com/2022/4/26/448034/2-Inmates-Stabbed-At-The-County-Jail.aspx.

83. On April 25, 2022, Hamilton County District Attorney General Neal Pinkston described Silverdale as "one of the most dangerous places to be in our county…" and claimed that it was "unacceptable." In a press conference three days later, Sheriff Hammond responded saying that Pinkston "…hit the nail right on the head…" He added, "[t]here are those who think that once you're locked up you have to be given the same rights as when you're outside." "That's not true." The Chattanoogan, *Sheriff Hammond Details Difficulties, Challenges At Silverdale Jail* (last updated, May 21, 2022), available at https://www.chattanoogan.com/2022/5/21/449636/Sheriff-Hammond-Details-Difficulties.aspx; La Shawn Pagán, Chattanooga Times Free Press, *Hamilton*

*County sheriff defiant as he responds to violence complaints, call for investigation* (last updated, April 28, 2022), available at https://www.timesfreepress.com/news/2022/apr/28/hamiltcounty-sheriff-defiant-he-responds-viol/#/questions/.

84.     On May 16, 2022, an inmate was found dead in Silverdale. She was five days into serving a 45-day sentence for drunk driving and was not provided the proper medication for her seizures and thyroid issues despite the court specifically instructing the jail to do so in its sentencing order. La Shawn Pagán, Chattanooga Times Free Press, *Chattanooga families claim deadly medical neglect at Silverdale Detention Center* (last updated, September 10, 2022), available at https://www.timesfreepress.com/news/2022/sep/10/families-claim-deadly-medical-neglect-tfp/.

85.     On May 26, 2022, an inmate died at Erlanger Hospital, where he was taken three months into serving his sentence at Silverdale. He suffered from HIV and asthma, and Silverdale personnel were made aware of this fact when he was transferred to the facility. Despite knowing about his condition, Silverdale personnel failed to provide the inmate with any medication for over two months. His mother pleaded with Silverdale personnel daily, begging them to allow her to drop off her son's medication, but they refused. The inmate's physical condition deteriorated rapidly causing him to require the use of a wheelchair to get around.

The inmate reported that nurses at Silverdale looked at him like he was a "disease" and believed they did so because he was a gay man with HIV. Silverdale personnel watched as the inmate slowly and painfully wasted away before their eyes, but they never provided him with his medicine. *Brown v. County of Hamilton, Tennessee, et al.*, No. 1:23-cv-00045 (E.D. Tenn. February 27, 2023), Complaint, Dkt. No. 1, ¶ 31-47.

86. On June 12, 2022, a Silverdale inmate died in custody after being taken to the hospital for a bleeding ulcer.

87. On July 23, 2022, four inmates escaped Silverdale. It took guards almost four hours to notice they were missing. Staff Report, Chattanooga Times Free Press, *Four inmates captured after escaping from Silverdale Detention Center* (last updated, July 23, 2022), available at https://www.timesfreepress.com/news/2022/jul/23/four-inmates-escape/.

88. On August 17, 2022, an inmate was not released in compliance with the judgment of the criminal court that suspended his sentence. He was subsequently illegally held by Silverdale for a period of 126 days.

89. In September of 2022, a seventy-year-old inmate at Silverdale was savagely assaulted by multiple other inmates. On September 19, he was admitted to Erlanger Hospital with brain bleeding. He subsequently died at Erlanger Hospital on November 19, 2022.

90.     On October 16, 2022, an inmate died seven months into serving his sentence at Silverdale. He suffered from numerous infections brought on by malnutrition. His cellmate has told the family that he witnessed the man black out on three different occasions, but nurses still would not see him. His cellmate was so worried that he would have to watch him die that he even attempted faking his own illness to get the nurses' attention. Erlanger staff commented that he might have survived had he been brought to the hospital sooner. *Jackson v. County of Hamilton, Tennessee, et al.*, No. 1:23-cv-00046 (E.D. Tenn. February 27, 2023), Complaint, Dkt. No. 1, ¶ 31-42.

91.     On December 20, 2022, yet another inmate was found dead in Silverdale. His cause of death was listed as fentanyl overdose according to the Hamilton County Medical Examiner. Drugs are believed to be widely available in Silverdale due to the lack of oversight from Silverdale personnel. La Shawn Pagán, Chattanooga Times Free Press, *Officials identify Chattanooga man who died at Silverdale Detention Center* (last updated, December 22, 2022), available at https://www.timesfreepress.com/news/2022/dec/22/chattanooga-man-identified-dies-silverdale-tfp/.

92.     On January 3, 2023, an inmate at Silverdale filed a complaint pro se and in forma pauperis alleging that Silverdale nurses and Sheriff Hammond ignored his 100 to 300 medical requests relating to treatment for various ailments

including potential cancer. In analyzing his complaint under the PLRA, the Court found that the inmate had alleged sufficient facts to allow a plausible inference that Sheriff Hammond and several Silverdale nurses had denied him constitutionally adequate medical care. His complaint was ultimately dismissed due to a failure to effectuate service. *Goodwin v. Hammond, et al.*, No. 1:23-cv-1 (E.D. Tenn. January 17, 2023), Memorandum and Order, Dkt. No. 4, pgs 3-5, 8.

93.     Despite these multiple documented instances of medical neglect, inhuman living conditions, and violence, Plaintiff believes that Defendants have taken no action to prevent further deprivations of civil rights at Silverdale.

**Plaintiff's Brutal Beating and Denial of Medical Care at Silverdale**

94.     Plaintiff was put in Silverdale on April 20, 2022, on misdemeanor charges for stealing $5 worth of food from Walmart and evading arrest. He was homeless at the time. Plaintiff has a bachelor's degree in marketing from Middle Tennessee State University, but he developed mental health issues several years ago that led to a lifestyle of homelessness and petty crime.

95.     While in Silverdale, Plaintiff became aware of ongoing violence amongst inmates that he realized was ignored by correctional officers.

96.     Then, late on the night of April 24, 2022, three fellow inmates beat up Plaintiff as he was going to bed. The inmates, who suspected Plaintiff had taken food stashed in the cell, yanked Plaintiff off the top bunk so that he fell about six

feet onto the concrete floor, landing on his face. Plaintiff was then beaten into unconsciousness.

97. Silverdale staff had Plaintiff taken by ambulance to Erlanger Hospital.

98. Diagnosis in the emergency room, including computed tomography (CT) scan results, showed Plaintiff had about eight facial fractures to his left eye, a closed head injury, and eye hematomas.

99. Both of Plaintiffs' eyes were swollen shut, and eye surgeon Robert Evan Levy, M.D., gave Plaintiff sutures in his upper and lower left eyelids.

100. Dr. Levy's medical instructions from that emergency room visit clearly called for a follow-up in seven days to have Plaintiff's sutures removed, to monitor his left eyeball's hypertension and to see a plastic surgeon for a partially entrapped IR muscle. Silverdale personnel ignored those instructions. Plaintiff received no follow-up care. He wasn't given an ice pack or any pain medicine.

101. Dr. Levy's medical instructions also called for antibacterial ointment to be applied to Plaintiff's sutures four times a day for a week. Plaintiff wasn't given ointment.

102. Plaintiff's mother, Susan Johnson, didn't learn of the attack on her son until the afternoon of April 29, when a nurse let Plaintiff call home.

103. About an hour later, Johnson began making multiple phone calls to officials at Silverdale and the Hamilton County Sheriff's Office.

26

104. She left voicemail messages on the nurses' phone at Silverdale.

105. Johnson got a call back that day from "Sarah" in the sheriff's department's internal affairs office. Sarah said that Plaintiff would get antibacterial ointment and an ice pack for his eyes. But Plaintiff called his mother at 9 p.m., and said he was in terrible pain and had gotten neither ointment nor an ice pack.

106. Over the next few days, Johnson left additional voicemail messages at the Silverdale nurse's phone number.

107. It wasn't until May 2 that a nurse called Johnson back. The nurse said she could not give Plaintiff an ice pack because he could eat it and kill himself. The nurse also said she could not tell Johnson anything about Plaintiff's health due to medical privacy rules under HIPAA, the Health Insurance Portability and Accountability Act, even though Johnson was listed as Plaintiff's HIPAA contact.

108. Johnson also called then-Hamilton County District Attorney Neal Pinkston, who was interested in the conditions at Silverdale, and made Silverdale an issue in his unsuccessful re-election campaign.

109. Pinkston asked if it would be better if Plaintiff were transferred to the Catoosa County Jail, a minimum-security facility in Ringgold, Georgia, where Plaintiff was facing misdemeanor charges for being pulled over for speeding and having less than an ounce of marijuana in his car.

27

110.  On May 2, Plaintiff appeared in Hamilton County Court where the misdemeanor charges against him were dismissed per the District Attorney's office.

111.  On May 5, Plaintiff was moved from Silverdale to the Catoosa County Jail, where he was due to serve 15 days and pay a fine.

112.  Health personnel at the Catoosa County Jail removed the sutures from Plaintiff's eyelids.

113.  A nurse in the Catoosa County Jail looked at Plaintiff's medical records on May 12 and told her supervisor he needed medical attention. So, Jail Administrator Dr. Cindy Graham released Plaintiff eight days early to get medical attention.

114.  After his release, Plaintiff was in terrible pain, he had double vision and difficulty breathing, sleeping and eating.

115.  Medical complications after his release included a June 3 diagnosis of cellulitis, or infection, in his left eye orbit, the bony cavity in the skull that houses the globe of the eye.

116.  He was given intravenous antibiotics to combat cellulitis.

117.  If Plaintiff hadn't sought help that day, he could have lost eyesight in his left eye, the doctor said. And, if infection had spread to the other eye – the doctor said Plaintiff could have gone permanently blind in both eyes.

118. Plaintiff resisted his mother's urging for follow-up care, because he didn't want to be a financial burden to his parents.

119. Plaintiff got eye surgery on May 20, 2022.

120. All told, Plaintiff and his family spent about $50,000 on medical care because of the assault.

## FIRST CAUSE OF ACTION

## 42 U.S.C. § 1983 – VIOLATION OF FOURTEENTH AMENDMENT BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

121. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

122. The Civil Rights Act, as codified at 42 U.S.C. § 1983, provides as follows:

123. "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."

124. Pursuant to the Fourteenth Amendment, Plaintiff, a pretrial detainee at Silverdale, had a constitutional right to be free from cruel and unusual punishment

during his confinement, including a right to be protected from violence, provided with adequate medical care, and provided with humane living conditions.

125. Defendants acting individually and together, under the color of law, acted to violate Plaintiff's rights when they failed to protect him from a brutal beating by other inmates, failed to provide him with adequate medical care after his assault, and failed to provide him with humane living conditions.

126. Defendants understood their actions would result in the deprivation of Plaintiff's constitutional rights as evidenced by the numerous incidents of inmates at Silverdale suffering brutal attacks at the hands of other inmates, inmates dying from lack of adequate medical care at Silverdale, the failed inspections at Silverdale, the public comments by Silverdale and County officials, and the public outcry from the that preceded Plaintiff's treatment.

127. Defendants' intentional, unreasonable, reckless, and deliberately indifferent acts were the moving force behind the violation of Plaintiff's constitutional rights and his resulting serious injuries.

128. Plaintiff's rights to be protected from violence, provided adequate medical care, and confined in humane living conditions are well-established, and reasonable persons in Defendants' position would have known or should have known that their actions would result in a violation of Plaintiff's constitutional rights.

30

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – MONELL LIABILITY

## BROUGHT BY PLAINTIFF AGAINST DEFENDANTS HAMILTON COUNTY AND SHERIFF HAMMOND

129.   Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

130.   Hamilton County—through the decisions of its policymaker Sheriff Hammond—was directly responsible for the deprivation of Plaintiff's constitutional rights as described herein and is thus subject to liability under 42 U.S.C. § 1983. *Monell v. Dep't of Social Servs of New York*, 436 U.S., 658, 691 (1978).

131.   At all times material to this claim, Defendants Hamilton County and Sheriff Hammond failed to train, adequately supervise, and discipline officers regarding the protection of inmates from violence, provisioning of adequate medical care to inmates, and maintenance of humane living conditions at Silverdale.

132.   Defendants knew of the multiple failures in policy at Silverdale, as established by the instances cited herein and their own public statements, but nevertheless continued to operate the facility with minimal adjustments.

133.    Defendants were aware of the need to supervise, train, investigate, and discipline their subordinates to mitigate unreasonable risks of harm to inmates in Defendants' custody.

134.    Despite this knowledge, Defendants failed to adequately train, supervise, or discipline individuals who engaged in these behaviors. This failure to train, supervise, and discipline was a moving force behind the serious harm and violation of constitutional rights suffered by Plaintiff.

135.    As final policymakers, these Defendants acting individually and collectively, engaged in, established, condoned, ratified, and encouraged customs, policies, usages, practices, patterns, and procedures that they knew would and did directly and proximately create conditions of confinement that failed to mitigate serious risks of harm and violations of constitutional rights.

136.    Further, these Defendants failed to establish and maintain policies to mitigate known serious risks of harm, and these Defendants should have known that such failures would deprive people in their custody, including Plaintiff, of constitutional rights.

137.    Defendants were aware that the policies, procedures, practices, customs, and usages they established and those they failed to establish would result in violations of constitutional rights.

138.  These policies, practices, and customs specifically included Defendants' practice of failing to adequately classify inmates or develop and implement an adequate classification plan, failing to ensure adequate investigation into critical incidents, failing to implement corrective action plans to address the known substantial risks of harm described herein , failing to ensure deputies were observing housing units, failing to investigate incidents of harm, failing to provide appropriate training, disciplinary procedures, and supervision of staff, and failing to ensure adequate staffing so as to effectively leave inmates under their care unprotected from violence, create inhumane conditions of confinement, and provide deficient medical care that allowed known substantial risks of serious injury to go unmitigated, failing to follow or enforce basic jail guideline requirements, failing to establish or enforce policies regarding the proper provisioning of medical care to inmates, failing to engage in oversight sufficient to prevent constitutional rights violations, and failing to adequately respond to obvious violations of constitutional rights of people held at Silverdale.

139.  These actions, and failures to act, were a moving force in the substantial risk of harm and unconstitutional conditions of confinement leading to Plaintiff's serious injuries.

140.  At all times material to this claim, Defendants were acting under color of law and in the course and scope of their employment. Defendants acted

unreasonably, recklessly, and with deliberate indifference and disregard for the safety and constitutional rights of Plaintiff by failing to mitigate known serious risks of harm. The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the Defendants, were allowed to exist because policymakers with authority over these acts exhibited deliberate indifference to the problems, thereby effectively ratifying them.

141.   The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Plaintiff's serious injuries.

## **THIRD CAUSE OF ACTION**

### **TENNESSEE COMMON LAW NEGLIGENCE**

### **BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS**

142.   Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

143.   Defendants owed a legal duty of care to Plaintiff to protect him from reasonably foreseeable harm.

144.   Defendants knew or should have known that they placed Plaintiff in a cell with numerous armed inmates, that doing so would cause Plaintiff to be attacked , and that further failing to provide Plaintiff with adequate medical care

after his assault would cause him injury, but they failed to use reasonable care to prevent said harm.

145.   Defendants' breaches of their duty of care to Plaintiff directly and proximately caused Plaintiff's serious injuries.

## **FOURTH CAUSE OF ACTION**

## **TENN. CODE ANN. § 1-3-121**

## **BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS**

146.   Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

147.   Defendants knowingly and deliberately failed to ensure constitutionally adequate levels of inmate safety, living conditions, and medical care at Silverdale.

148.   Tenn. Code Ann. § 1-3-121 enables Plaintiff to vindicate claims for declaratory and injunctive relief in cases involving illegal and unconstitutional government action. It specifically provides that: "Notwithstanding any law to the contrary, a cause of action shall exist under this chapter for any affected person who seeks declaratory or injunctive relief in any action brought regarding the legality or constitutionality of a governmental action."

149.    Defendants' chronic deliberate indifference to inmate safety, medical needs, and living conditions contravenes the provisions of the Fourteenth Amendment to the United States Constitution.

150.    Defendants' actions additionally contravene Tenn. Const. art I, § 32, which provides: "That the erection of safe prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for."

151.    Absent, at minimum, regular independent monitoring and unannounced inspections designed to determine whether Defendants have remedied their chronic deliberate indifference to inmate safety, medical needs, and living conditions, Defendants will continue to act both illegally and unconstitutionally with respect to their operation of Silverdale.

152.    To remedy Defendants chronically illegal and unconstitutional actions at Silverdale, this Court should appoint an independent monitor to conduct regular unannounced inspections of Silverdale and report whether Defendants have remedied their chronic unlawful conduct.

153.    In the absence of Defendants coming into compliance with their obligation to ensure constitutionally adequate levels of inmate safety, medical care, and living conditions, this Court should issue an injunction permanently enjoining Defendants from continuing to operate Silverdale going forward.

36

## FIFTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

154.   Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

155.   Defendants' conduct in failing to protect Plaintiff, a pretrial detainee in their custody, from a brutal beating , and then further failing to provide him with adequate medical care following the assault was done intentionally or recklessly.

156.   Defendants' conduct as described above is certainly so outrageous and extreme as to not be tolerated by a civilized society.

157.   As a result of Defendants' conduct Plaintiff has and will suffer from a lifetime of serious mental injury.

## SIXTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

158.   Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

159.   Defendants owed a legal duty of care to Plaintiff to protect him from reasonably foreseeable harm.

160. Defendants knew or should have known that they placed Plaintiff in a cell with numerous armed inmates, that doing so would cause Plaintiff to be attacked , and that further failing to provide Plaintiff with adequate medical care after his assault would cause him serious emotional and physical injury, but they failed to use reasonable care to prevent said harm.

161. Defendants' breaches of their duty of care to Plaintiff directly and proximately caused Plaintiff's serious emotional injuries.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays for the following relief:

A. That proper process issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

B. That the Plaintiff be awarded all compensatory, consequential, and incidental damages to which he is entitled;

C. That the Plaintiff be awarded punitive damages;

D. That the Plaintiff be awarded all costs and discretionary costs of trying this action;

E. That the Plaintiff be awarded his reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b);

F. That a jury of 12 be empaneled to try this cause;

G.     That pre-judgment and post-judgment interest be awarded to Plaintiff;

H.     That this Court declare that Defendants acted illegally by failing to ensure constitutionally adequate levels of inmate safety, medical care, and living conditions at Silverdale.

I.     That this Court appoint an independent monitor to conduct regular unannounced inspections at Silverdale and report whether Defendants have remedied their chronic unlawful conduct, and that this Court issue an injunction permanently enjoining Defendants from continuing to operate Silverdale if they fail to do so; and

J.     For such other and further relief as this Court deems just and proper.


Dated this 24th day of April, 2023

*s/Robert E. Barnes*
Robert E. Barnes
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 510-6211
Facsimile: (310) 510-6225
robertbarnes@barneslawllp.com

39